**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4001
_____

DAVID OPALINSKI; JAMES MCCABE, on behalf of themselves and all others
similarly situated,

Appellants

v.

ROBERT HALF INTERNATIONAL INC; ROBERT HALF CORPORATION;
STEPHEN SONNENBERG
_____

On Appeal from the United States District Court for the District of New Jersey
(D.C. Civil Action No. 2-10-cv-02069)
District Judge: Honorable Madeline C. Arleo
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 15, 2016

Before: CHAGARES, GREENAWAY, JR., and RESTREPO, *Circuit Judges*.

(Filed: January 30, 2017)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Plaintiffs David Opalinski and James McCabe challenge the District Court's dismissal of their collective action complaint brought pursuant to the Fair Labor Standards Act. We agree with the District Court's finding that Plaintiffs' employment agreements do not provide for class[1] arbitration, and, therefore, we will affirm.

**I**

Defendants Robert Half International, Inc. and Robert Half Corp. ("Defendants") are collectively an international staffing agency that employs managers who sell job placement services. Plaintiffs David Opalinski and James McCabe ("Plaintiffs") are two former staffing managers who worked for Defendants in New Jersey. Plaintiffs filed their original lawsuit against Defendants in the District of New Jersey in 2010, claiming that Defendants misclassified them as overtime-exempt employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and that they should be classified as non-exempt employees entitled to overtime pay. Plaintiffs sought to pursue individual claims as well as collective action claims on behalf of thousands of Robert Half staffing managers.

Plaintiffs had signed employment agreements with Defendants, which contained arbitration clauses. McCabe's agreement, which he signed in August 2001, provided in relevant part:

---

[1] The term "class," as used throughout this opinion and the parties' briefing, is intended to encompass groups of plaintiffs organized as either class actions or collective actions.

2

> Any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11, or 13 hereof) shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association.

JA89. Opalinski's agreement, which he signed in February 2002, provided in relevant part:

> Employer and Employee agree that, to the fullest extent permitted by law, any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement, whether based on contract or tort or otherwise (except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof) shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Claims subject to arbitration shall include contract claims, tort claims, or claims related to compensation, as well as claims based on any federal, state or local law, statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, the California Fair Employment and Housing Act (for California Employees), and comparable equal opportunity statutes for employees in other states. However, claims for unemployment compensation, workers' compensation, and claims under the National Labor Relations Act shall not be subject to arbitration.

JA81.

After filing an Answer to the Complaint in May 2010, Defendants moved the District Court in July 2011 to compel arbitration, pursuant to the arbitration clauses above, and dismiss the case. In their motion, Defendants asked the District Court to

3

compel arbitration on an *individual* basis. The District Court granted the motion in part, compelling arbitration and dismissing the case, but not compelling *individual* arbitrations. Instead, the District Court held that the *arbitrator*, rather than the court, should be the one to decide whether the case would proceed on an individual or class basis, because the parties' agreements did not expressly address the issue. Plaintiffs then filed a Demand for Arbitration with the American Arbitration Association.

The assigned arbitrator first considered the threshold issue of whether the parties' employment agreements authorized class arbitration, and concluded in May 2012 that they did. In June 2012, Defendants moved the District Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4), to vacate the arbitrator's decision.[2] In December 2012, the District Court denied the motion to vacate. Defendants timely appealed that denial to this Court.

In July 2014, this Court held in a precedential opinion that the availability of class arbitration was an issue for the *court*, rather than an arbitrator, to decide. A petition for rehearing *en banc* was denied, as was a petition for certiorari with the Supreme Court. So the case was remanded back to the District Court for a determination of whether the parties' employment agreements authorized class arbitration.

After the case was remanded, Defendants moved the District Court to dismiss the action on the grounds that the agreements did not authorize class arbitration. In

---

[2] The FAA provides that upon a party's motion, a district court situated in the district where an arbitration award was made "may make an order vacating the award" if it finds that an arbitrator "exceeded [his or her] powers." 9 U.S.C. § 10(a)(4).

November 2015, the District Court granted Defendants' motion with prejudice, deciding that the agreements did not allow Plaintiffs to arbitrate their claims on a class-wide basis. Plaintiffs then filed this timely appeal.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the District Court's final decision pursuant to 9 U.S.C. § 16, because it concerned an arbitration that is subject to the FAA. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000). "We exercise plenary review over questions regarding the . . . enforceability of an agreement to arbitrate" and over the District Court's legal determinations regarding arbitrability. *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012).

## II

Plaintiffs present two issues on appeal: (A) whether the availability of class arbitration is for the court or the arbitrator to decide; and (B) whether the District Court erred in determining that the parties' agreements do not permit class arbitration. We address each in turn below.

## A

As to the first issue, this Court has already explicitly decided, in a precedential opinion in this same case, that the question of arbitrability of class claims is for the court, not the arbitrator, to decide. *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335–36 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1530 (2015). We cannot revisit this issue, consistent with our well-established Internal Operating Procedures, which prohibit a

5

panel of this Court from overruling an earlier binding panel decision. *See* Third Circuit Internal Operating Procedure 9.1.[3]

**B**

Turning to the second issue – whether the parties' agreements permit class arbitration – the Supreme Court has made clear that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). The parties do not dispute that the employment agreements at issue here were "silent" as to class arbitration. Instead, the parties' dispute centers on whether, notwithstanding this "silence," the arbitration clauses can still be read to "agree" to class arbitration.

Defendants argue that where there is no *explicit* mention of class arbitration in an employment contract, courts typically hold that there has been no agreement to class arbitration. Indeed, Defendants find support for their argument in *Quilloin,* in which this Court noted that "[s]ilence regarding class arbitration generally indicates a prohibition." 673 F.3d at 232. Several other Circuits, including the Fifth, Sixth, Seventh, Eighth, and Ninth, have likewise stated that "silence" in an agreement regarding class arbitration generally indicates that it is not authorized by the agreement. *See, e.g.*, *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014) (affirming the district court's

---

[3] "It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so." Third Circuit Internal Operating Procedure 9.1.

6

grant of a motion to strike class allegations, where the arbitration agreement did not mention class arbitration); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643−44 (5th Cir. 2012) (finding that silence in an agreement does not "constitute[] consent to class arbitration" (internal quotation marks omitted)), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728−29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) (stating "the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter").

Plaintiffs contend, however, that the absence of explicit language authorizing class arbitration in an employment agreement is *not* fatal to class claims, because authorization can be implicit in nature. Put differently, if an arbitration clause reflects the parties' *intent to agree* to class arbitration, then it should be permitted, even where class arbitration is not explicitly mentioned anywhere in the contract. According to Plaintiffs,

7

this implicit authorization can be found in their employment agreements by applying New Jersey contract law, which follows the ordinary rules of contract interpretation.[4]

The District Court agreed with Defendants that the absence of any explicit mention of class arbitration in the employment agreements weighed against a finding that it was authorized by the agreements. The District Court then went on to consider whether consent to class arbitration could be inferred from the agreements, in the absence of express authorization, and found that it could not. We agree with the reasoned decision of the District Court. Even assuming *arguendo* that class arbitration may be permitted without express authorization in an arbitration clause, Plaintiffs have set forth nothing suggestive of any implicit intent to permit class arbitration here.

Plaintiffs offer several textual arguments in support of their position that their agreements reflect the parties' intent to arbitrate class claims. First, Plaintiffs argue that the clause "'***[a]ny*** dispute or claim arising out of or relating to Employee's employment' shall be submitted to binding arbitration" is intentionally broad and designed to encompass class or collective actions. Br. of Appellants 19 (quoting JA81, 89). But Plaintiffs' argument misses a critical point: the agreement specifies that the dispute or claim must arise out of or relate to the *particular* employee's employment, not *any* employee's employment. Further, the Supreme Court was clear in *Stolt-Nielsen* that "[a]n implicit agreement to authorize class-action arbitration" cannot be inferred "solely

---

[4] Plaintiffs do not argue that either federal law or New Jersey law contains a "default" class arbitration rule to be applied in the absence of an agreement. *See Stolt-Nielsen*, 559 U.S. at 676−77.

8

from the fact of the parties' agreement to arbitrate." *Stolt-Nielsen*, 559 U.S. at 685; *see also Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071−72 (2013) (Alito, J., concurring) (suggesting, without deciding, that an arbitrator had "improperly inferred '[a]n implicit agreement to authorize class-action arbitration'" from an agreement's "any dispute" language, which was nothing more than "the parties' agreement to arbitrate" (quoting *Stolt-Nielson*, 559 U.S. at 685)). On its face, the "any dispute" language in Plaintiffs' agreements shows only the parties' general intent to arbitrate their disputes. We cannot infer an intent to arbitrate class claims on this basis.

Second, Plaintiffs point to the following language in Mr. Opalinski's agreement as evidence of an intent to arbitrate class claims:

> [C]laims related to compensation, as well as claims based on any federal, state or local law, statute, or regulation, including but not limited to claims arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, the California Fair Employment and Housing Act (for California employees), and comparable equal opportunity statutes for employees in other states.

Br. of Appellants 21 (quoting JA81). Plaintiffs argue that because all of the specific statutes listed in this sentence allow for class litigation, and litigants often bring class claims under these statutes, the inclusion of this sentence suggests that the parties intended to permit class arbitration. We find this argument unavailing. The statutes listed – like many statutes and common law causes of action – allow for *both* class *and* individual claims, so the agreement's reference to them sheds no more light on the

9

parties' intent to arbitrate class claims than the "any dispute" language discussed above.[5]

Likewise, the *exclusion* of certain other substantive claims – which presumably could

take the form of individual or class claims – from the arbitration requirement adds

nothing to our understanding of the parties' intent to allow class arbitration.[6]

We are equally unpersuaded by Plaintiffs' remaining arguments. Plaintiffs

contend that the agreements incorporated the American Arbitration Association ("AAA")

rules, and a supplement to the rules provides that the AAA will administer class

arbitrations; therefore, according to Plaintiffs, the agreements contemplate class

arbitration. But these rules did not exist in 2001 and 2002, when the parties signed the

employment agreements, so they cannot be used as evidence of the parties' intent. For

the same reason, evidence that class arbitration was customary *after* 2003 in the context

---

[5] It is likely that the parties referenced these "equal opportunity statutes" by name because certain jurisdictions will not uphold an agreement to arbitrate statutory employment discrimination claims unless they are specifically and unambiguously included in an arbitration clause. *See, e.g., Garfinkel v. Morristown Obstetrics & Gynecology Assoc.*, 773 A.2d 665, 672 (N.J. 2001) (stating that New Jersey courts should "not assume that employees intend to waive [their rights to sue under the New Jersey Law Against Discrimination] unless their agreements so provide in unambiguous terms").

[6] The arbitration clauses in both agreements specify that "any dispute or claim arising out of or relating to Employee's employment" shall be submitted to arbitration . . . (*except for any dispute involving alleged breach of the obligations contained in Sections 8, 9, 10, 11 or 13 hereof*)." JA81, 89 (emphasis added). The "Sections" noted refer to a confidentiality clause, a non-compete clause, internal and external non-solicitation clauses, and a clause pertaining to the post-termination use of the employer's name. Mr. Opalinski's employment agreement also states that claims for unemployment compensation, worker's compensation, and claims under the National Labor Relations Act were exempt from the arbitration requirement. JA81. At least some of these claims may be expressly excluded from the arbitration requirement because they cannot be arbitrated as a matter of law in many jurisdictions. *See, e.g.*, N.J. Stat. Ann. § 34:15-49 (giving the Division of Worker's Compensation "exclusive original jurisdiction [over] all claims for worker's compensation benefits").

10

of wage claims is irrelevant to the parties' intent here. *See Stolt-Nielsen,* 559 U.S. at 673 n.4 (suggesting that class arbitration was uncommon before 2003, when the AAA adopted its Class Rules).

Plaintiffs contend next that under New Jersey law, the rule of *contra proferentem* dictates that ambiguous terms of adhesion contracts, like the employment agreements, should be construed against the drafter. But as Defendants point out, this doctrine of contract interpretation should only be employed as a "last resort," after a court has already examined the contract's terms, exhausted other accepted methods of contract construction, and it still cannot determine the meaning of an ambiguous term. *See Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007). That is not the case here, where there is no textual support in the employment agreements for Plaintiffs' suggested interpretation and there is ample case law suggesting class arbitration is inappropriate in these circumstances.

Finally, Plaintiffs urge this Court to hold that class action waivers in arbitration agreements, which have the effect of barring class actions, are unconscionable and invalid under New Jersey law and the National Labor Relations Act. Plaintiffs did not raise these arguments before the District Court, so they have waived the opportunity to raise them on appeal.[7] *Birdman v. Office of the Governor*, 677 F.3d 167, 173 (3d Cir. 2012) ("It is axiomatic that 'arguments asserted for the first time on appeal are deemed to

---

[7] We cannot agree with Plaintiffs' suggestion that footnotes 3 and 4 of their response brief to Defendants' Motion to Vacate the arbitration award put the District Court on notice of these arguments.

11

be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.'" (quoting *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011))).

### III

For the foregoing reasons, we will affirm the District Court's dismissal of this action with prejudice.